UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 04-106-KKC

TARA SUE SANCHEZ HATFIELD,                                                                PLAINTIFF,

v.               **MEMORANDUM OPINION AND ORDER**

CITY OF MIDDLESBORO, ET AL.,                                                              DEFENDANTS.

\* \* \* \* \* \* \* \* \*

This matter is before the Court on the Motion for Summary Judgment (Rec. No. 33) of the Defendants, City of Middlesboro (the "City") and Mike Ausmus ("Officer Ausmus") and Ben Spurlock ("Officer Spurlock"), who are both police officers for the City and are sued in their individual and official capacities. For the following reasons, the Court GRANTS the motion in part and DENIES it in part.

I.   FACTS.

   A.   Arrest by Ausmus.

The Plaintiff, Tara Sue Sanchez Hatfield ("Hatfield") alleges that, on or about March 12, 2003, Officer Ausmus entered an apartment occupied by her ex-husband, Don Lamb, after receiving a report of a domestic disturbance. (Rec. No. 1, Complaint, ¶¶ 8-9). She told Officer Ausmus that there was no disturbance and that she had been asleep on the sofa. (Rec. No. 1, Complaint, ¶ 9). In her deposition, Hatfield stated that she had been drinking that morning and had fallen asleep. (Rec. No. 37, Hatfield Dep. at 105).

Hatfield also testified that Officer Ausmus began asking questions and she told him she did not have to answer. (Rec. No. 37, Hatfield Dep. at 54). She asserts that when she attempted to leave

the apartment, Officer Ausmus followed her down the steps and into the yard, tackled her, threw her down, kicked her in her vagina, ground his boot heel into her lower back resulting in a cut several inches long, dragged her by her hair for about 30 or 40 feet to his car, handcuffed her and sprayed an entire can of mace in her eyes. (Rec. No. 37, Hatfield Dep. at 54-55). Hatfield was charged with Alcohol Intoxication and Resisting Arrest. (Rec. No. 36, Response at 8; Rec. No. 39, Reply, Ex. 1). Hatfield asserts that Officer Ausmus had no probable cause to arrest her. (Rec. No. 1, Complaint, ¶ 13).

### B.   Arrest by Spurlock.

Then, on or about July 15, 2003, Officer Spurlock went to an apartment to serve a bench warrant on Hatfield, for failure to present proof of twenty (20) hours of community service. (Rec. No. 1, Complaint, ¶ 17). Hatfield testified that, on this date, she owed three hours of community service. (Rec. No. 37, Hatfield Dep. at 97). Hatfield testified that she had been drinking that day but was not drunk. (Rec. No. 37, Hatfield Dep. at 104-05).

Hatfield testified that Officer Spurlock informed her she was under arrest. (Rec. No. 37, Hatfield Dep. at 109). She claims that Officer Spurlock handcuffed her with her arms in front of her and a hairbrush in her hand. (Rec. No. 1, Complaint, ¶ 18; Rec. No. 37, Hatfield Dep. at 110). Hatfield testified that the handcuffs were so tight she felt she was losing circulation and could not move. (Rec. No. 37, Hatfield Dep. at 109). She asserts that she was not resisting arrest but tapped Officer Spurlock with the brush to get his attention because of the tight handcuffs. (Rec. No. 1, Complaint, ¶ 18; Rec. No. 37, Hatfield Dep. at 110).

She testified that, Officer Spurlock took out his baton and put it under her arm and threw her into his car. (Rec. No. 37, Hatfield Dep. at 109-10). She testified that he beat on her leg with the baton causing large bruises and then sprayed her head with mace. (Rec. No. 37, Hatfield Dep. at 110-

11; Rec. No. 1, Complaint, ¶ 19).

Hatfield was charged with Resisting Arrest, Disorderly Conduct, Third Degree Assault (assault on a police officer); and Second Degree Persistent Felony Offender. She was eventually indicted for Disorderly Conduct, Resisting Arrest and Third Degree Assault. She was convicted of the lesser included charge of Harassment of Officer Spurlock. (Rec. No. 33, Mot. for Summ. J. at 7-8; Rec. No. 39, Reply, Ex. 1).

### C. Attempts to File Complaint with City.

Hatfield claims that she and her mother attempted to file formal complaints regarding these incidents with the City but that, when she contacted the City's police chief, Jeff Sharp, he refused to allow them to file a Complaint and told Hatfield to find a lawyer (Rec. No. 37, Hatfield Dep. at 136).

### D. Claims.

Hatfield asserts a claim under 42 U.S.C. § 1983 against all of the Defendants, claiming that they violated her constitutional rights. Hatfield claims that Officers Ausmus and Spurlock violated her right to be free from unreasonable search and seizure under the Fourth Amendment. She also asserts that Officers Ausmus and Spurlock violated her right to be free from excessive, unreasonable and unjustified force against her person. In addition, Hatfield asserts state law claims against the officers charging that they violated her rights under § 10 of the Kentucky constitution and committed assault and battery on her. (Rec. No. 1, Complaint, ¶¶ 14-15, 21-23, 25).

Hatfield asserts that it was the policy and custom of the City to inadequately and improperly investigate citizen complaints of police misconduct and to tolerate police misconduct (Rec. No. 1, Complaint, ¶ 29); and that it was the City's policy and custom to inadequately supervise and train its police officers. (Rec. No. 1, Complaint, ¶ 30).

3

The City and the Officers have moved for summary judgment on Hatfield's claim that the Officers used excessive force in arresting her. (Rec. No. 33, Motion for Summ. J. at 10). They argue that the Officers did not violate the Fourth Amendment or are entitled to qualified immunity on the § 1983 claim. (Rec. No. 33, Mot. for Summ. J. at 11). With regard to the assault and battery charge, the Officers argue that they used reasonable physical force against Hatfield. The Defendants also argue that Hatfield has produced no evidence that the City had a "deliberate indifference" to the use of excessive force by officers or that it had a policy or custom of using excessive force. (Rec. No. 33, Mot. for Summ. J. at 14-16).

## II.   STANDARD ON SUMMARY JUDGMENT.

Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 322-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show

4

that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must view the facts and draw all inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The moving party must show conclusively that there is no genuine issue of material fact. *Id*. However, at the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter. *Wiley v. U.S.*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249). The Court is not to judge the evidence or make findings of fact. *60 Ivy Street Corp.,* 822 F.2d at 1435-36. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F.Supp.2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### III. QUALIFIED IMMUNITY.

Under the doctrine of qualified immunity, "government officials performing discretionary

5

functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Farm Labor Organizing Comm. v. Ohio St. Highway Patrol*, 308 F.3d 523, 532 (6th Cir. 2002)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity entitles its possessor to '*immunity from suit* rather than a mere defense to liability." *Daugherty v. Campbell*, 935 F.2d 780, 783 (6th Cir. 1991)(quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Qualified immunity provides "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."*Harlow*, 457 U.S. at 818.

Courts employ a three-step inquiry for determining whether qualified immunity is proper:

> *First*, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. *Second*, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. *Third*, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (emphasis added) (quotation omitted). If the answer to all three questions is "yes," qualified immunity is not proper.

    **A.    Violation of Constitutional Right?**

First, we consider whether the facts, when taken in the light most favorable to the Plaintiffs, demonstrate the occurrence of a constitutional violation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry."). Whether the Officers violated Hatfield's right to be free from excessive force is a question that must be analyzed

6

under an "objective reasonableness" standard. *Greene v. Barber*, 310 F.3d 889, 898 (6th Cir. 2002)(citing *Graham v. Connor*, 490 U.S. 386, 395(1989)). "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). The Court must consider:

> the facts and circumstances of each particular case, including the severity of the crime as issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight.

*Graham*, 490 U.S. at 396.

The right to make an arrest carries with it the right to use "'some degree of physical coercion or threat thereof. . . ." *Graham*, 490 U.S. at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id*. (citation and quotations omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id*.

### B. Was Right Clearly Established?

If the Court determines that the officers violated Hatfield's constitutional right to be free from excessive force, the second step of the qualified immunity inquiry "requires a determination that the right was so clearly established that a reasonable official would understand that the particular conduct at issue violated that right." *Crockett v. Cumberland College*, 316 F.3d 571, 579 (6th Cir. 2003). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Greene*, 310 F.3d at 894 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was

7

unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

A police officer may be entitled to qualified immunity even though he has violated the plaintiff's rights. *Greene*, 310 F.3d at 894. The immunity inquiry should acknowledge that "reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier*, 533 U.S. at 205. "If the officer's mistake as to what the law requires is reasonable, . . .the officer is entitled to the immunity defense." *Id*.

"In inquiring whether a constitutional right is clearly established, we must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002). "[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Feathers*, 319 F.3d at 848.

"[T]he right to be free from excessive force is a clearly established Fourth Amendment right." *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001). The Sixth Circuit has articulated a clearly established right to be free from specific types of non-deadly excessive force, such as handcuffing an individual too tightly. *See Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993). The Sixth Circuit has also consistently held that various types of force applied after the subduing of a suspect are unreasonable and a violation of a clearly established right. *See, e.g.*, *Phelps v*. Coy, 286 F.3d 295, 301 (6th Cir. 2002) ("[T]here was simply no governmental interest in continuing to beat Phelps after he had been neutralized, nor could a reasonable officer have thought there was."); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) ("[A] totally gratuitous blow with a policeman's nightstick may cross the constitutional line.").

### C. Analysis of Hatfield's Claims.

Taking all of Hatfield's allegations as true, she has presented sufficient evidence in the form

of her own testimony that the particular type of physical force exerted against her was by Officers Ausmus and Spurlock was objectively unreasonable and the Officers should have been aware that they were violating her rights. In the case of the arrest by Officer Ausmus, Hatfield alleges that Officer Ausmus threw her down to the ground, kicked her in her vagina, ground his boot heel into her lower back, dragged her by her hair for about 30 or 40 feet to his car, and, after handcuffing her, sprayed an entire can of mace in her eyes. Hatfield asserts that, throughout this activity, she remained on the ground.  Taking all of Hatfield's allegations as true, this would amount to excessive force in her arrest.

In the case of Officer Spurlock, Hatfield testified that, after she was handcuffed and in the back seat of his car, Officer Spurlock beat on her leg with a baton and sprayed her head with mace. Hatfield states that Officer Spurlock took these actions after she "tapped" him with a hairbrush. While Hatfield's action with the hairbrush may reasonably have appeared threatening to Officer Spurlock, again, taking all of Hatfield's allegations as true, the use of mace and a baton against her while she was handcuffed and in the back seat of his car was not reasonable.

The Officers and at least one witness have provided a very different version of events than Hatfield. Nevertheless, for purposes of this motion and the qualified immunity analysis, the Court must accept all of the Plaintiff's allegations as true.  For all the above reasons, the Court finds that Officers Spurlock and Ausmus are not entitled to qualified immunity.  For the same reasons, the Court finds that the Officers are not entitled to summary judgment on Hatfield's state law claim of assault and battery.

### IV.    CLAIMS AGAINST CITY.

Cities and counties can be found liable under § 1983 only where a policy or custom of the municipality has caused a violation of the plaintiff's constitutional rights. *Thompson v. Ashe*, 250

F.3d 399, 409 (6th Cir. 2001) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978)). Hatfield does not assert that the violation of her constitutional rights resulted from an officially enacted policy. Rather, she claims that the City had a custom of failing to train or discipline its officers.

"A 'custom' for purposes of *Monell* liability must 'be so permanent and well settled as to constitute a custom or usage with the force of law.'" *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996)(quoting *Monell*, 436 U.S. at 691). "It must reflect a course of action deliberately chosen from among various alternatives." *Id.* "In short, a custom is a legal institution not memorialized by written law." *Id.* In order for *Monell* liability to attach, there must be proof of some policy or custom that can be attributed to an official policymaker. *Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985)(quotations and citation omitted).

As to Hatfield's charge that the City failed to train its police officers, Hatfield presents no supporting evidence. In fact, the sole evidence in the record is that the City's officers are trained by the Department of Criminal Justice Training, a Kentucky state agency. Further, each officer receives a copy of the Use of Force Policy and Procedure Manual and receives instruction about the manual during a training period. (Rec. No. 33, Mot. for Summ. J., Ex. 7, Sharp Dep. at 10). Each officer receives 16 weeks of basic training and 10 weeks of field training. (Rec. No. 33, Mot. for Summ. J., Ex. 7, Sharp Dep. at 10).

As to Hatfield's charge that the City failed to discipline its officers, Hatfield presents evidence that she and her mother, Kay Geer, attempted to file formal complaints regarding these incidents with the City of Middlesboro and were referred to the Chief of Police Jeff Sharp but that he refused to allow her to file a complaint. Hatfield argues that his reaction clearly demonstrates "deliberate indifference to the Plaintiff's rights and a conscious choice to refuse to investigate

complaints and, in turn to discipline his officers." (Rec. No. 36, Response at 11). Hatfield also submits the affidavit of Doris Hoskins who states that Police Chief Sharp beat her and otherwise abused her in 2002. (Rec. No. 37, Hoskins Aff. ).

Hatfield's evidence of wrongdoing by Sharp, however, does not support her claim against the City. Hatfield cannot base her claim against the City solely on Sharp's conduct. *Claiborne County*, 103 F.3d at 507. Rather, Hatfield must show that the City itself, through its final policymakers, was the wrongdoer. *Id.* This is because municipalities cannot be held liable under § 1983 for the actions of its employees on a *respondeat superior* theory. *Id*. (citing *Monell,* 436 U.S. at 691). Hatfield has presented no evidence that the City consciously chose not to act when confronted with evidence that its officers undertook obviously unconstitutional conduct. Accordingly, her claim against the City must be dismissed.

V. **CONCLUSION.**

For all the above reasons, the Court hereby ORDERS as follows:

1) The Motion for Summary Judgment (Rec. No. 33) is GRANTED with regard to the claims against the City and the City is hereby DISMISSED from this action;

2) The Motion for Summary Judgment (Rec. No. 33) is otherwise DENIED.

In addition to regular service by mail, a copy of this Order shall be transmitted forthwith to counsel of record by facsimile or by electronic filing.

This 8th day of November, 2005.



Signed By:
*Karen K. Caldwell*
**United States District Judge**